UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

PK FENSKE-BUCHANAN,

    Plaintiff,

  v.

BANK OF AMERICA N.A.,

    Defendant.

CASE NO. C11-1656 MJP

ORDER ON MOTIONS,
DISCOVERY AND SCHEDULING

The Court, having received and reviewed:

1. Plaintiff's Motion to Compel (Dkt. No. 41), Defendants' Response (Dkt. No. 44), and
Plaintiff's Reply (Dkt. No. 48);

2. Defendants' Supplemental Statement (Dkt. No 55); Plaintiff's Motion to Strike (Dkt.
No. 60), and Defendants' Opposition to Motion to Strike (Dkt. No. 61);

3. Plaintiff's Motion for Sanctions (Dkt. No. 51), Defendants' Opposition (Dkt. No. 66),
Plaintiff's Reply (Dkt. No. 69), and Defendants' Surreply (Dkt. No. 71);

4. Plaintiff's Motion for Extension of Time to Complete Discovery (Dkt. No. 58),
Defendants' Opposition (Dkt. No. 62) and Plaintiff's Reply (Dkt. No. 65);

1         5.  Plaintiff's Motion for Reconsideration (Dkt. No. 64) and Defendants' Response to

2              Motion for Reconsideration (Dkt. No. 85).

3    and all attached declarations and exhibits, makes the following rulings:

4         IT IS ORDERED that Plaintiff's Motion to Compel is GRANTED IN PART and

5    DENIED IN PART.

6         IT IS FURTHER ORDERED that Plaintiff's Motion to Strike is DENIED.

7         IT IS FURTHER ORDERED that Plaintiff's Motion for Sanctions is DENIED.

8         IT IS FURTHER ORDERED that Plaintiff's Motion for Extension of Time to Complete

9    Discovery is GRANTED.

10        IT IS FURTHER ORDERED that the parties will meet and confer and present to the

11   Court a proposed case schedule with new deadlines for discovery and dispositive motions and a

12   proposed new trial date by no later than **June 21, 2012.**

13        IT IS FURTHER ORDERED that Plaintiff's motion for reconsideration of the dismissal

14   of the Consumer Protection Act claim is GRANTED; the claim alleging a violation of the

15   Washington Consumer Protection Act is reinstated.

16   **Background**

17        This is a multi-count complaint against Defendants Bank of America , N.A. (BANA) and

18   BAC Home Loans Servicing, L.P. (BACHLS) by Plaintiff, a mortgagee who claims in essence

19   that her prepayments of principal were systematically misapplied and that Defendants retaliated

20   against her when she complained.  The Court will not attempt to summarize the lengthy and

21   complex factual setting in which these claims arise; such facts as are necessary to explain the

22   rulings on the various motions at issue will be included in the relevant sections.

23        The motions at issue are primarily concerned with issues which have arisen during the

24   discovery process, as well as a motion for reconsideration arising out of the Court's ruling on an

earlier motion to dismiss.  On June 14, 2012, the Court held a status/scheduling conference with the parties at which the discovery issues were discussed and (hopefully) resolved – the results of that conference will be reflected in this order.

**Discussion/Analysis**

Motion to Compel

Following the status/scheduling conference, the parties agreed that the following information either has been provided or will be provided following a further meet and confer:

1. The names of all of Defendants' employees who touched Plaintiff's file for the period between her first request for application of a principal prepayment and a time to be determined by the parties.

2. The organization charts for the departments who employed the people identified in #1.

3. All communications between the people identified in #1 concerning Plaintiff's file.

4. Copies of the policies and procedures by which the decisions by people identified in #1 affecting Plaintiff's loan were made.

Additionally, defense counsel has agreed to sit down with Plaintiff's attorney, go through the collection of undifferentiated documents which were provided in response to Plaintiff's discovery requests and identify which documents were provided in response to which specific discovery request.

Several of Plaintiff's disputed discovery requests involve interrogatories or requests for production (RFPs) for records on events or practices which affected loan recipients throughout Defendants' customer base.  Defendants have responded to these requests by labeling them "overbroad" and "unduly burdensome."  The Court has encouraged counsel for both sides to confer with each other to narrow the requests down to information which is relevant to Plaintiff's claims and to confer with Defendants' IT department to identify databases and search terms

1  which can produce the information which is useful to Plaintiff without being wasteful of

2  Defendants' time and resources.

3       The parties also have what appears to be a minor dispute centering on the impact of the

4  Gramm-Leach-Bliley Act (GLBA), which prohibits financial institutions from disclosing

5  "nonpublic personal information" to nonaffiliated third parties without notice to their customers.

6  15 U.S.C.A. § 6801(a).  There does not seem to be any real disagreement that Plaintiff's

7  discovery requests fall under an exemption to GLBA where the disclosure is necessary to

8  "respond to judicial process" (15 U.S.C.A. § 6802(e)(8)).  To the extent that Defendants believe

9  that a court order is required to trigger their obligation to disclose, they may consider this ruling

10  to constitute that court order.   Defendants are also ordered to reveal to Plaintiff forthwith

11  whether they are withholding any documents under a claim of GLBA immunity; if not, they shall

12  state so definitively.

13

14  <u>Defendant's "Supplemental Statement"/Plaintiff's Motion to Strike</u>

15       Following the ruling on their motion to dismiss, Defendants filed a "supplemental

16  statement" concerning Plaintiff's motion to compel which argued that, in the wake of the

17  dismissal of the Plaintiff's Consumer Protection Act (CPA) claims, any discovery request of

18  Plaintiff's which was "company-wide" in its scope should be mooted, since she now had no need

19  for information which could establish a "public-wide" impact of any of Defendants' actions.

20       The Court finds (as Defendants have conceded) that the argument was improperly raised

21  by means of Defendants' "supplemental statement" -- the FRCP makes no allowance for such a

22  pleading.  At the very least, Defendants should have requested permission to file the statement.

23

24

1   Nevertheless, as the issue has now been raised and briefed by both sides, the Court will proceed

2   to rule on it by denying Defendants' request.

3          First, as indicated above and discussed in greater detail below, the Court is reinstating

4   Plaintiff's CPA claim.   This entitles Plaintiff to seek discovery on the "public interest" element

5   of that claim relevant to the impact of Defendants' policies and practices on their customers

6   within Washington State.

7          Second, even had the CPA claim been dismissed, it would still be incorrect to state that

8   Plaintiff has no need for customer information that could lead to the discovery of a "pattern or

9   practice" of malfeasance on Defendants' part.   The Court agrees that "to prove fraudulent intent,

10  retaliation and systematic and deliberate practice, discovery into how many times the practice

11  has been employed necessarily is relevant." Mtn to Strike, p. 2.  Proof of scienter required for

12  establishing fraud alone can support the production of information related to company-wide

13  practices.

14

15  <u>Motion for Sanctions</u>

16          Following entry of a protective order, Defendants provided Plaintiff with 67 pages of

17  Bates-stamped material (Dkt. No. 54-4) – although no narrative was provided, the material

18  appeared to be the transaction record for Plaintiff's mortgage account.  The documents were

19  redacted and accompanied by a privilege log justifying every redaction on the basis that "[n]otes

20  reflect attorney-client communication regarding litigation."  Dkt. No. 54-6.  An unredacted copy

21  of the document was inadvertently provided to Plaintiff's expert who contacted Plaintiff's

22  counsel with that information.  Although Plaintiff's counsel returned the unredacted version to

23  defense counsel, concerns had been raised about the redactions and Plaintiff's counsel requested

24

that Defendants submit the redacted and unredacted copies to the Court for *in camera* review.
Defendants declined that request and instead delivered an unredacted copy of the materials to
Plaintiff, accompanied by a declaration that the documents were still subject to claims of
protection and privilege.  Dkt. No. 54-12.

Defendants argue that all the redacted material represents good faith claims of attorney-
client privilege and/or work product.  The Ninth Circuit defines the elements of attorney-client
privilege as follows:

1. Where legal advice of any kind if sought
2. From a professional legal advisor in his or her capacity as such
3. The communications relating to that purpose
4. Made in confidence
5. By the client
6. Are, at that instance, permanently protected
7. From disclosure by the client or by the legal advisor
8. Unless the privilege is waived.

In re: Fischel, 557 F.2d 209, 211 (9th  Cir. 1977).  Work-product protection applies to
"documents and tangible things prepared in anticipation of litigation or for trial" by or on behalf
of a party, and protects materials prepared for litigation that reflect the thought process of
counsel.  FRCP 26(b)(3); *see* Hickman v. Taylor, 329 U.S. 495, 511 (1947).

The Court fails to see how either of these privileges applies to the material which was
redacted by Defendants' counsel from the documents at issue.

In some of the redacted instances, there is no indication at all that the redacted activity
(e.g., "REQUEST: REVERSE FUNDS AND REPOST WITH THE CORRECT EFF DATES" at
pp. 722, 726) was done at the request of Defendants' counsel or that Defendants' counsel was
notified.  Some of the redacted material simply lists the name of a BANA employee (e.g.,
PATRICIA BUCHANAN at pp. 731, 733, 734).  Even where the redaction indicates the
possibility of attorney involvement (e.g., "RECEIVED EMAIL FROM BAC LEGAL RE

MISAPPLIED PYMTS BEGINNING 03/30/10. SENT REPLY ADV WILL RESEARCH

LOAN HISTORY AND HAVE ANY PYMTS MISAPPLIED CORRECTED WILL REPLY TO

LEGAL AFTER FURTHER RESERARCH OF PYMTS" at p. 718; 'LOAN HISTORY WAS

REQUESTED TO BE FAXED WITH DATES FROM 07/2010 TO 11/20/11… Attention1:

PATRICIA K BUCHANAN  Attention 2: JAMIE WALK (*BANA attorney)*" at p. 723), there is

no indication that the activity occurred because "legal advice was sought by the client" or that

the redaction was protecting any "documents prepared in anticipation of litigation."  "Work

product" does not apply to notations made in Plaintiff's loan account that a request was

communicated from an attorney to an employee of a client.

     The notations in the loan account that do not reflect any attorney involvement are clearly

not protected.  Nor does the Court find that the notations that make mention of legal counsel are

protected because they do not represent instances where legal advice was being sought by the

client; they represent either notations of a communication where research was requested or  the

results of proactive research requested by the attorneys themselves.

     All of which leads to the conclusion that this material was improperly redacted, and the

effect of the redaction would have been to hamper Plaintiff's efforts to discover who was

involved in correcting the misapplication[1] of her principal prepayments.   However, having met

with the parties and placed the case back on a course which will (again, hopefully) avoid these

sorts of misunderstandings for the remainder of the litigation, the Court is not inclined to impose

sanctions and will simply let this ruling stand as a caution to the parties to utilize their privileges

and protections wisely and with restraint.

---

[1] Plaintiff claims that one effect of the redactions is to "conceal" Defendants' awareness that her principal prepayments had been misapplied.  Defendants note, correctly, that there is plenty of mention in the originally unredacted portions of the document that the payments had been misapplied; e.g., Dkt. Nos. 54-5 and 54-12 at p. 719.

1   Motion for Extension of Discovery

2   It was agreed between the Court and the parties that additional time would be needed for

3   discovery and dispositive motions in light of the current state of discovery, so Plaintiff's motion

4   in this regard will be granted.  The parties will submit a proposal for a revised case schedule.

5

6   Motion for Reconsideration

7   Plaintiff seeks reconsideration of the dismissal of Count VII, her CPA claim.  That claim

8   was dismissed on the grounds that Plaintiff had done nothing more than argue that the practices

9   of which she complained had the "capacity" to impact the public, which was found to be

10  inadequate to satisfy the "public interest" requirement of a CPA violation.  Dkt. No. 50, Order, p.

11  13.  Plaintiff argues that the Court improperly analyzed the "public interest" element and the

12  Court agrees.

13  A close reading of the leading CPA case, Hangman Ridge, reveals that the "likelihood"

14  that others will be injured in a similar fashion is sufficient to support the "public interest"

15  element of the a CPA cause of action:

16          [I]t is the likelihood that additional plaintiffs have been or will be injured in
            exactly the same fashion that changes a factual pattern from a private dispute to
17          one that affects the public interest. [citation omitted] Factors indicating public
            interest in this context include: (1) Were the alleged acts committed in the course
18          of defendant's business? (2) Did defendant advertise to the public in general? (3)
            Did defendant actively solicit this particular plaintiff, indicating potential
19          solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining
            positions? As with the factors applied to essentially consumer transactions, not
20          one of these factors is dispositive, nor is it necessary that all be present.

21  Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,  105 Wash.2d 778, 790-791

22  (1986).

23  The factors enumerated by the Hangman Ridge court for the purpose of establishing the

24  "likelihood that additional plaintiffs have been or will be injured in exactly the same fashion"

1   emphasize that, from a standpoint of proper pleading, Plaintiff need only allege circumstances

2   which are at best tangentially related to the <u>actual</u> impact on consumers other than herself (e.g.,

3   her mortgage was part of Defendants' business, Defendants advertise to the general public, she

4   was actively solicited as a customer by Defendants and did not bargain with them from a position

5   of equivalent power).  Plaintiff has plead a sufficient number of these factors to satisfy the

6   Hangman Ridge test for "*likelihood* of public impact" and it was error to dismiss her claim for

7   failure to plead that impact with more precision.

8          The fact that at least a portion of Plaintiff's claims against Defendants springs from

9   allegedly boilerplate language in her mortgage documents lends further support to her argument

10  that the practices of which she complains have the potential to impact the wider public and is

11  sufficient to defeat (at this early stage) Defendants' argument that she has not plead specific facts

12  suggesting a generalized pattern of conduct.  It is entirely plausible that routine language utilized

13  in documents by institutions as large as BANA has a real and substantial potential for impacting

14  a wider public if there is an actionable gap between what the institution is representing as its

15  practice and what it is actually practicing.  Plaintiff's CPA claim may yet be vulnerable, post-

16  discovery, to an attack on summary judgment grounds, but she has plead the claim adequately

17  enough to proceed to discovery.

18         Plaintiff also argues that she has plead violations of several state statutes which were

19  created to protect the public interest and that a finding of violation of those statutes would

20  constitute a *per se* violation of the "public interest" element of the CPA.  Hangman Ridge makes

21  it clear that it is a little more complicated than that:

22

23

24

ORDER ON MOTIONS, DISCOVERY AND
SCHEDULING- 9

1

[T]he public interest element may be satisfied per se. The per se method requires a showing that a statute has been violated which contains a specific legislative declaration of public interest impact. In <u>Haner v. Quincy Farm Chems., Inc.</u>, *supra,* 97 Wash. at 762, 649 P.2d 828, we stated the rule, which has continuing validity:

[U]nless there is a 'specific legislative declaration' of a public interest, the public interest requirement ... is not per se satisfied ...

2

3

4

5    <u>Id.</u> at 791.

6         Plaintiff specifically argues that the Consumer Loan Act claim which the Court upheld

7    operates as a *per se* qualifier for CPA claims.  But the statute itself reads that "[a]ny violation of

8    this chapter… is an unfair and deceptive act or practice and unfair method of competition in the

9    conduct of trade or commerce in violation of RCW 19.86.020 [CPA]."  RCW 31.04.208.  The

10   "public interest" element is specifically excluded from "*per se* violation" status in this statute,

11   and on that basis the Court does not accept that portion of Plaintiff's argument.  Nevertheless, the

12   CPA claim will be reinstated and permitted to proceed.

13

14   **Conclusion**

15        Plaintiff's motion to compel will be granted in part and the parties are to proceed forward

16   with discovery utilizing the guidelines worked out at the status conference.  Plaintiff's motion to

17   strike Defendants' supplemental statement will be denied, but Plaintiff will be permitted to

18   proceed forward with her discovery requests for certain information from the Defendants'

19   customer-wide databases.

20        While the Court agrees that Defendants provided Plaintiff with improperly-redacted

21   materials, her motion for sanctions will be denied.

22        Plaintiff's motion for an extension of discovery will be granted and incorporated into the

23   revised case schedule which the parties will file with the Court by June 21, 2012.

24

1        Finally,  Plaintiff's motion for reconsideration of the dismissal of the Consumer

2    Protection Act claim will be granted, and the claim alleging a violation of the Washington

3    Consumer Protection Act is reinstated.

4        The clerk is ordered to provide copies of this order to all counsel.

5        Dated June 21, 2012.

6

7

8                                          Marsha J. Pechman

9                                          United States District Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER ON MOTIONS, DISCOVERY AND
SCHEDULING- 11